JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

James m. Copas, et al

## DEFENDANTS

kelly Sackett and Kalamazoo County Republican Committee

**(b)** County of Residence of First Listed Plaintiff    Wayne
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Kalamazoo
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Daniel J. Hartman, (P52632)
P.O. Box 307 Petoskey, MI 49770
231-548-5100

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 840 Trademark | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC 2201, 28 USC 1331 and the 1st and 14th amendmebts

Brief description of cause:
Intraparty Disputes of Local and State Committee Republican Party

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
May 28, 2024

SIGNATURE OF ATTORNEY OF RECORD
/s/ Daniel J. Hartman

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES M. COPAS,
DANIEL J. HARTMAN,
RODNEY HALCOMB,
KERRY LYNN ELIEFF,
EMILY CRAWFORD
ROBYN MATSON
    Plaintiffs,

CIVIL ACTION NO: _____

vs.

KELLY SACKETT, and THE
KALAMZOO COUNTY REPUBLICAN COMMITTEE
    Defendants.

,
_____

Daniel J. Hartman (P52632)
Attorney for Copas & Hartman
PO BOX 307
Petoskey, MI 497701185
(231) 348-5100
Danjh1234@yahoo.com

Lester N. Turner (P21632)
Attorney for Plaintiffs Halcomb,
Elieff, Crawford and Matson
Hideaway Valley Drive #34
Harbor Springs, MI 49740
(231) 629-1403
lesternnturner@gmail.com

## VERIFIED COMPLAINT

NOW COME Plaintiffs and state in support of the verified complaint for declaratory

relief (28 USC § 2201) to determine a federal question (28 USC § 1331) the rights of the parties

under the 1st amendment of the United States Constitution provision for the Freedom of

Association and guaranteed by the 14th Amendment to prevent infringement by the states on the

rights as to the non-justiciability of certain matters related to an intraparty dispute to be resolved

1

internally by a political party without interference by the government (executive, legislative or judicial), especially as to the interpretations of bylaws and leadership disputes.

## JURISDICTION AND VENUE

1. Pursuant to 28 USC § 2201 et seq, the District Court has the duty to "*declare the rights and other legal relations of any interested party seeking such declaration, whether or not any other relief is or could be sought.*"

2. Pursuant to 28 USC § 1331, a federal court has jurisdiction over all civil actions arising under the Constitution, laws or treaties of the United States, commonly known as the federal question doctrine.

3. The case involves the federal question as to subject matter jurisdiction and justiciability of political party committees by state courts for intraparty disputes of leadership under the federal US Constitution Article 1 and the Freedom of Association.

4. The request for declaratory relief raises a federal question that involves a substantial federal interest—the 1st Amendment Constitutional right to freedom of association and the non-justiciability of certain intraparty disputes of a political party.

5. The request for declaratory relief is *outcome determinative* of many pending and future state causes of action and therefore necessary to resolve unnecessary litigation in the state courts based on the federal question.

6. The request for declaratory relief is to resolve a disputed interpretation of law.

7. The resolution of the federal question will not upset the balance of federal/state authority by creating a flood of similar litigation in federal courts.

8. The declaratory action will limit the use of the newly created "contract exception" to clear federal application of the 1st Amendment and has the potential to resolve the matter

2

thereby limiting a flood of state actions for individual interpretation of political party bylaw disputes.

## PARTIES, JURISDICTION and VENUE

9. There is a pending state court action, 2024-0026-CZ *Kalamazoo County Republican Committee and Kelly Sacket vs. Rodney Halcomb, Kerry Lynn Elieff, Emily Crawford, Robyn Matson, Kristina Karamo, Daniel Hartman, James Copas and the Secretary of State Jocelyn Benson,* which is pending before Honorable Curtis Bell in the Circuit Court for the County of Kalamazoo, State of Michigan.

10. The case remains pending and no order on the issue has been entered.

11. The Plaintiff James M. Copas is the former Executive Director who was an officer of the Michigan Republican State Committee acting in his official capacity during parts of 2023 and 2024 and at all relevant times which gave to the complaint.

12. The Plaintiff Daniel J. Hartman was the General Counsel for the Michigan Republican State Committee acting in his official capacity during parts of 2023 and 2024 and at all relevant times which gave to the complaint.

13. The Plaintiffs Rodney Halcomb, Kerry Lynn Elieff, Emily Crawford and Robyn Matson are putative officers of the Kalamazoo County Republican Committee elected following a special convention of delegates of Kalamazoo County held on August 15, 2023, which removed and replaced the County Executive Committee; and which was officially recognized as the rightful officers by a majority vote of the Michigan Republican State Committee on January 13, 2024, and for the purpose of reporting to the Michigan Secretary of State pursuant to MCL 169.211 a part of Michigan's Campaign Finance Law.

14. The Defendants are residents of and located in Kalamazoo County.

15. The Defendant Kelly Sackett is the disputed leader of a faction within the Kalamazoo County Republican Party who was the chair of the party elected in November 2023 and removed by the vote of the convention of delegates and replaced by Plaintiff Rodney Halcomb.

16. The Kalamazoo County Republican Committee is the county committee for Kalamazoo County, Michigan that is formed by Kalamazoo Republican Precinct Delegates elected during the biannual state primary (or subsequently elevated by vote of the committee).

17. The Michigan Republican Party collectively provides the county precinct delegates the rights to associate as a County Republican Party; to elect a County Republican Executive Committee; to elect delegates to a state convention with a Congressional district caucus for the purpose of electing members and officer to both the District Republican Committee and the Michigan State Republican Committee as well as voting for certain officers of the party elected at the convention.

18. The plaintiffs all have standing as they are sued by the defendants in state court for alleged breach of contract and torts arising from their political activity in conjunction with either the Kalamazoo County Republican Committee or the Michigan Republican State Committee.

## FACTUAL ALLEGATIONS

19. On August 2, 2022, the Michigan Republican party elected new precinct delegates at the state primary in all of the counties.

4

20. Subsequently, the county party delegates met in convention to elect a new executive committee with the planned term of approximately two years until the next biannual state primary in which new delegates would be elected.

21. Prior to a state convention of delegates that was conducted on February 18, 2023, which elected certain state officers (including Kristina Karamo as chair), each county party conducted a convention of delegates to elect and delegate authority to certain delegates to attend the state convention and district caucuses.

22. On February 17, 2023, the congressional district caucuses met with the Republican delegates from their district and elected Republican district committee officers and seven (7) Republican State Committee Members.

23. During the 4th District Caucus, the delegates voted to change a rule which the delegates from Kalamazoo objected to and thus began a controversy that has resulted in two lawsuits.

24. The Kalamazoo Executive committee under its chair Kelly Sackett, removed certain members of the minority faction from its executive committee to consolidate power, began to purge the members of the party including elected delegates, and radically amend its bylaws.

25. Certain members of the Kalamazoo County Party filed a lawsuit against Kelly Sacket and the Kalamazoo County Republican Committee in the Kalamazoo County Circuit Court. Case No 2023-0169-CZ before Judge Bell, which resulted in his granting a motion for summary disposition in favor of the defendant Kelly Sacket. stating in his order essentially that although Kelly Sacket and the Kalamazoo County Republican State Committee in fact did violate the bylaws by removing the members of the county

5

executive committee, the matter was not justiciable by the court. The opinion is attached

as Exhibit 1. It states at page 20:

"With clear overreach by the Chair, the question becomes whether this is internal politics as defined by O'Brien and its progeny. Does the improper removal of an Executive Committee member confer jurisdiction for this Court? This is a question that is not only governed by the Bylaws in question but also a direct-and-substantial nexus to the potential nomination of Republican candidates as described herein above...

The opinion also states at page 21:

"Here, we have a political party, a private entity, that was performing its intraparty actions..."

However, in dicta, Judge Bell stated at page 17:

"In the instant case, the Plaintiffs do not assert a claim of breach of contract by KGOP's of the bylaws. However, it must be noted that Michigan has recognized that contracts can be formed by the application of Bylaws. In *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 164 (2019), the Michigan Supreme Court decided a case where a plaintiff pleaded a claim for a breach of contract, arguing the defendants breached the Bylaws. . . Even though in the instant case Plaintiffs did not asset a breach of contract claim, it is possible that a breach of contract claim involving KGOP's breach of its bylaws could be adjudicated by this Court. THIS WOULD BE TRUE ONLY IF THE QUESTION WAS NOT ONE OF INTERNAL POLITICAL DECSIONS." [Emphasis Added}.

And again, in the conclusion on page 25:

The more challenging question concerns whether there is a contra actual claim based on a clear violation of the Bylaws in the removal of Ms. Harris. As discussed hereinabove, this is not part of the Plaintiffs' Complaint."

26. The Defendants have harvested the contract theory and ignored the limitation he

recognized in his comment which is clearly dicta as he was making a comment about

unpled claims and possible theories that were not raised by the parties—but his final

comment was clear that he understood the political question would NOT be justiciable

by a state court.

6

27. Political parties can have intraparty disputes. There should be challenges, dissent and discussion. The ultimate power in the political party is DELEGATED from the election of precinct delegates who form conventions and determine who will govern them.

28. Since the executive committee was unwilling to listen to the delegates grievances, the delegates determined that they would exercise their inherent power of self-governance and invite everyone to a convention of delegates and determine if they should reform the executive committee.

29. There was a call to convention by the delegates which included invitations to Sackett and Crew to determine if there would be removal by the ultimate authority—the delegates.

30. At convention, the delegates of the Kalamazoo County Republican Party met and voted with 96 precinct delegates present (this number exceeded the number of precinct delegates at the November 2022 convention that originally elected an executive committee that included Sackett).

31. The 2022 executive committee was removed at convention and a new 2023 executive committee was elected.

32. The new 2023 committee elected as officers Rodney Halcomb, Kerry Lynn Elieff, Emily Crawford and Robyn Matson, who than began acting as the Kalamazoo County Republican Committee with the authority of the delegates granted to them in convention which included forming new bylaws.

33. The Kalamazoo County Party Precinct Delegates, through its convention of delegates ultimately decided who should be their executive committee.

34. This convention was an option provided for in Robert's Rules of Order.

7

35. No other political solution was available since neither the 4th District Committee nor the

Michigan Republican State Committee had been delegated authority over any county

committees in their bylaws or any other mechanism to resolve disputes.

36. This executive committee formed as the legitimate Kalamazoo County Republican Party

(a county executive committee of the Republican Party of Michigan) and then in

November petitioned the State party for recognition as the official county party

according to MCL 169.211 (6).

> (6) "Political party committee" means a state central, district, or county committee
> of a political party or a party attempting to qualify as a new political party under
> section 685 of the Michigan election law, 1954 PA 116, MCL 168.685, that is a
> committee. Each state central committee shall designate the official party county
> and district committees. There must not be more than 1 officially designated
> political party committee per county and per congressional district.

37. The Halcomb faction and the 2023 Kalamazoo County Executive Committee was

recognized as the official Republican County committee for Kalamazoo County by the

4th District Committee.

38. The Halcomb faction and the 2023 Kalamazoo County Executive Committee sought to

gain recognition on December 2, 2023, from the Michigan Republican State Committee

at a regular meeting.

39. Due to the fact that certain members of the Michigan Republican State Committee acted

to deny a quorum on December 2, 2024, no official business was conducted, and the

matter was not addressed until January 13, 2024.

40. On January 13, 2024, the Michigan Republican State Committee of which 84 members

were present (61 plus 23 proxies), (not some action by Karamo, Copas, or Hartman)

voted overwhelmingly to recognize the Executive committee that was elected by the

August 15, 2023 Convention of Delegates and its officers, Rodney Halcomb, Kerry Lynn Elieff, Emily Crawford and Robyn Matson.

41. During that vote on December 13, 2024, Kristina Karamo did not vote because the matter was clearly decided, and Daniel J. Hartman abstained. Further James, M. Copas did not have voting rights as executive director, and finally none of the officers (Rodney Halcomb, Kerry Lynn Elieff, Emily Crawford and Robyn Matson) were recognized or participated in the state committee meeting on January 13, 2024.

42. Pursuant to that action of the state committee, James M. Copas (executive director) and Daniel J. Hartman (general counsel) sent a letter to the Michigan Secretary of State informing the state pursuant to MCL 169.211 who the Michigan Republican State Party recognized for compliance with state campaign finance laws. Attached as Exhibit 5

43. Kelly Sackett brought a lawsuit before Judge Bell and cited the dicta in his opinion as the ability to bring the cause of action as a contract breach claiming that the bylaws were a binding contract on the members.[1] Complaint attached as Exhibit 2

44. Kelly Sackett also includes in her cause of action: intentional torts in Count 3 Tortious Interference with a Business Relationship; Count IV Obstruction of Justice and Fraud; and Count V Conspiracy and Concert of Actions.

45. The entire basis of the three counts of intentional tort claims rely upon the actions of the officers (Rodney Halcomb, Kerry Lynn Elieff, Emily Crawford and Robyn Matson) acting as the Kalamazoo County Republican Committee following their election and the

---

[1] Ironically, Sackett also claims that none of the officers she sued are delegates or members of the Kalamazoo County Party. Therefore, her breach of contract claims lacks merit. No claim is made that Copas, Hartman and Karamo are subject to her contract claim.

letter to the Secretary of State following the January 13, 2024 action of the Michigan State Republican Committee.

46. Simultaneously, there is another cause of action in Michigan related to bylaws disputes which was before Judge Rossi of Kent County Circuit Court Case No. 24-00658-CZ, brought by a group of Plaintiffs claiming that Kristina Karamo was removed as the chair at a meeting on January 6, 2024 and asking Judge Rossi to interpret the bylaws on a 'bylaws interpretation" as part of a "breach of contract claim" and issue a permanent injunction in equity barring Karamo *retroactively* to January 6, 2024 from acting as chair of the Michigan Republican State Committee.

    a. This dispute resulted in a Preliminary Injunction issued on February 27. 2024. Attached as Exhibit 6.

    b. The matter is pending a final order by Judge Rossi following the court granting a Motion for Summary Disposition under MCR 2.116 (C)(10) saying there were no genuine issues of factual dispute to be resolved by the jury demand and entering a permanent injunction. Transcript of decision, Attached as Exhibit 7

    c. The defendant Kristina Karamo has asserted by earlier motion for summary disposition pursuant to MCR 2.116 (C)(4) that the Circuit Court lacked subject matter jurisdiction (1) under the non-justiciability of matter under the 1st Amendment to the US constitution and that federal precedent was binding on the state court as a federal question; (2) the parties lack standing to bring the cause of action; and (3) the cause of action is a Quo Warranto which has requirements both in the law and MCR 3.307 which were not complied with by the plaintiff as a condition precedent to filing an action which is mislabeled.

10

d. The defendant Kristina Karamo has also disputed the factual claims and interpretations of the 'construction of the bylaws" on their face and continuously asserted that Judge Rossi lacks the authority to overturn the interpretations made by the majority of the committee who on January 13, 2024 declared the January 6, 2024 an improper meeting and accepted the January 8, 2024 report of the Policy Sub-Committee and their interpretation of the bylaws and facts leading up to January 6, 2024. (attached as Exhibit 3 is the subcommittee report and Exhibit 4 is the minutes of January 13, 2024).[2]

e. Judge Rossi has stated that the minority faction of the state committee used 'sharp elbow' tactics to 'legally' overcome the will of the majority of the committee and overturn the election at convention of significant delegates who selected Kristina Karamo as the chair of the Michigan Republican Party[3].

f. The court denied the motion for summary disposition with an oral opinion (attached as Exhibit 6)

g. The Circuit granted Plaintiffs' Motion for Summary Disposition. (Exhibit 7)

h. Judge Rossi has invited appellate review in his remarks during the on the record ruling (transcript is pending).

47. Hillsdale County had a dispute and conducted two County conventions in November 2022 with different factions.

---

[2] The matter of the removal of the Chairwoman Karamo was brought to a vote and she was affirmed as chairwoman by a vote of 59-1.

[3] The final vote on February 18, 2023 was by 13 points for Kristina Karamo over none other than defendant *Matthew Deperno.*

11

a. The dispute was brought to the state committee leadership in 2022 under Chair Ron Weiser and resolved in favor of one faction through credentialling the delegates to attend the February 17-18, 2024 Convention.

b. Subsequently, the other faction brought suit in Hillsdale County Circuit and received a default judgment and an injunction in their favor. Case No. 22-688-CZ An Opinion and Order Granting Plaintiff's Motion for Default and Motion for Summary Disposition was signed April 28, 2023, along with a Declaratory Judgment. (Attached as Exhibit 8),

c. Later the Court issued a show cause against non-parties, .The Michigan Republican State Committee and Kristina Karamo who moved to dismiss citing non-justiciability as a 1st Amendment right of Association.

d. The court denied the motion to vacate the Order to Show Caisr. Exhibit 9

e. The Circuit court conducted a one-day bench trial and entered an order of contempt against the state committee and the chairwoman as well as members of the faction with an oral opinion. (Exhibit 10)

f. The Hillsdale order is not final as it lacks a monetary sanction thereby preventing an appeal in state court at this time. (Exhibit 11)

48. The undersigned, Daniel J. Hartman, who verified this complaint has been requested to bring causes of actions by at least two other county committees for bylaw interpretation disputes or leadership disputes; by several members of the state committee for bylaws breaches which have resulted in the state committee using officers not confirmed by the committee to vote to remove a delegate elected at district caucus to the National Presidential Convention merely because she was an officer in the Karamo

12

administration' and by members and officer of the state committee who have had their powers stripped by Pete Hoekstra who refused to recognize the Secretary[4] and Treasurer and has cut off their authority without complying with the rules in the bylaws for removal.

49. The concept that interpretations of bylaws and leadership disputes are justiciable is opening 'pandora's box and will result in an increase in litigation by competing factions of political parties.

50. The political party has always been left to itself to work out its differences internally prior to the aberrant actions by some members of Michigan judiciary that have decided to disregard the clear federal precedent.

51. The defendants in this declaratory relief action in their state suit place reliance upon the state court opinion of Judge Rossi that he has subject matter jurisdiction and that the matter is justiciable and in which he declared that actions by Kristina Karamo after January 6, 2024 are invalid.

52. The defendants in this declaratory action in their state suit place reliance on the opinion of state court Judge Rossi that he has subject matter jurisdiction and that the matter is justiciable.

53. Both of these other Circuit judges cited the dicta in Judge Bell's opinion attached as Exhibit 1.

54. For purposes of this action for declaratory relief, the outcome of the various disputes is immaterial as the only questions presented for this court is whether a state court will (1)

---

[4] Angela Gillisee has since resigned in disgust from the state committee and as Secretary and the committee has not appointed or confirmed a new one because Hoekstra reportedly lacks the votes to confirm, or to confirm General Counsel, or the Finance chair.

13

adjudicate a dispute of bylaws and grant equitable relief based on contract law; and (2)
whether a faction of a political party in a leadership dispute is liable to defend actions in
tort based upon their failure to recognize as legitimate the claimed leaders of a political
committee and actions in which they hold out a claim.

## COUNT 1 REQUEST FOR DECLARATORY RELIEF

55. Plaintiffs incorporate all prior paragraphs here.

56. The Plaintiffs request this court declare:

   a. That the organization of delegates of a political party within a county have an
      inherent right to delegate authority to an executive committee.

   b. That the delegates may, when they choose act with a convention, act to remove
      authority delegated to the executive committee for that county political
      committee and elect a new executive committee.

   c. That the county executive committee is responsible for holding a convention of
      delegates to elect county precinct delegates to represent the political party in
      certain state conventions and district caucuses including ones for the formation of
      district, state, and national committees by election of members and/or officers.

   d. That a political party committee may adopt bylaws to regulate the conduct of its
      committee meetings and rules for the conduct of its conventions.

   e. That the delegated authority to the district, state and national committees is
      defined by their committee bylaws as long as the bylaws are not in violation of
      the national bylaws as to the state, district and local committees; and as long as
      the county and district bylaws are not in violation of state bylaws.

14

f.  That unless the committee bylaws otherwise provide for an acceptance of the state laws that any law enacted by the state to regulate the conduct of the affairs of a political party as a political party is unconstitutional.

g.  That the political committee is vested with the final authority to interpret its own bylaws and rules as a political body—free from government intervention.

h.  That no party shall ask for, nor any court shall enter, orders interpreting the bylaws of a political committee for any reason; especially on any claim that the bylaws constitute a contract between members.

i.  That no party may commence a lawsuit for civil damages based on tort solely for the conduct of political activity in the name of a political party committee when there is a dispute within factions as to leadership or interpretation of bylaws.

## STATEMENTS OF LAW: *O'Brien, Heitmanis and Ferency*

57. The 1st Amendment of the US Constitution has established the freedom of association.

58. The issue has previously been addressed twice by the 6th Circuit Court of Appeals:

59. In *Heitmanis v Austin*, 899 F2d 521 (6th Cir 1990), the Court reversed *Heitmanis v Austin* 577 F Supp 1347 (ED Mich 1988) and stated that the case was not justiciable and declined to exercise judicial authority over a political party.

a.  The 6th Circuit clarified the right of the Michigan Republican Party to be free from *legislative* regulation over internal party affairs pursuant to the 1st Amendment Freedom of Association.

b.  Quoting *Heitmanis, supra* at 525 in Section IIA summarizing all prior jurisprudence the court stated in summarizing the District Court holding:

Courts have historically been reluctant to intervene in intra-party disputes. In *O'Brien v. Brown*, 409 U.S. 1, 4, 34 L. Ed. 2d 1, 92 S. Ct. 2718 (1972), the Supreme Court refused to decide a challenge to

15

the seating of Illinois delegates at the 1972 Democratic National Convention. In leaving the issue to the convention, the Court cautioned against judicial intervention in internal political party disputes:

> No holding of this court up to now gives support for judicial intervention in the circumstances presented here, involving . . . relationships of great delicacy that are essentially political in nature . . . Judicial intervention in this area traditionally has been approached with great caution and restraint . . . It has been understood since our national political parties first came into being as voluntary associations of individuals that the convention itself is the proper forum for determining intra-party disputes as to which delegates would be seated. Thus, these cases involve claims of the power of the federal judiciary to review actions heretofore thought to lie in the control of political parties. Highly important questions are presented concerning [**12] justiciability. . . .
> *Id.* (citations omitted).

Heitmanis v Austin, 899 F2d 521, 525 (CA 6, 1990)

60. The 6th Circuit did not reject this conclusion of the District Court which had relied upon

the Obrien v Brown decision, and the quote is included here as it is an excellent

summary of the caution against intervention into "internal political disputes".

61. In fact, the ED District court in *Heitmanis* erroneously determined that *state action*, a

necessary element of the constitutional claims, was not present. This is the determination

that resulted in reversal. "Instead, the Michigan state court required the State Party to

comply with the Michigan law. As such, we find these actions fairly attributable to the

state." Heitmanis v Austin, 899 F2d 521, 527 (CA 6, 1990).

62. In the present declaratory action, there is NO ISSUE that the court in entering an

injection is a state party to the dispute and that state action is present.

63. The State Courts had previously interpreted the Election law as controlling the intraparty

affairs of the Republican Party and was arguing for federal court abstention.

64. The 6th Circuit rejected first the abstention doctrine claims under the *Colorado*

*River* doctrine stating "Its curt mention of the constitutional question demonstrates the

inadequacy of the state forum. Thus, due to the additional issues raised in the federal

complaint and the failure of the state court to adequately address the constitutional

16

questions, we conclude that the district court should not have abstained under

the *Colorado River* doctrine."

65. The 6th Circuitt recited the *Colorado River* abstention doctrine:

The district court abstained based upon the abstention doctrine enunciated in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 47 L. Ed. 2d 483, 96 S. Ct. 1236 (1976). In *Colorado River*, the Supreme Court held that in "exceptional" circumstances, a federal district court may stay or dismiss an action solely because of the pendency of similar litigation in state court. *Id.* at 818. The Court held that "considerations of 'wise judicial administration, giving regard to conservation of judicial resources'" created a narrow exception to the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Id.* at 817. This court in *Crawley v. Hamilton County Commissioners*, 744 F.2d 28, 31 (6th Cir. 1984), noted [**19] the factors to consider under this doctrine:

In *Moses* [*H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983)], the Court listed five factors to be considered when deciding whether to dismiss a federal claim in deference to a parallel, state-court proceeding: (1) whether federal or state law provides the basis for decision in the case . . . (2) whether either court has assumed jurisdiction over any *res* or property; (3) whether the federal forum is less convenient to the parties; (4) avoidance of piecemeal litigation; and (5) the order in which jurisdiction was obtained. . . . 'No one factor is necessarily determinative' and there is a 'careful balancing of the important factors' . . . with the balance heavily weighed in favor of the exercise of jurisdiction. (citations omitted).

The Supreme Court in *Moses* also considered the availability of complete relief in the state court. 460 U.S. at 26-27. Heitmanis v Austin, 899 F2d 521, 527 (CA 6, 1990)

66. In the present case, the abstention doctrine would not apply either.

a. The curt manner in which the federal question was treated as well as an

abandonment of the principles of *O'Brein, supra* as to non-intervention in intra

party political party affairs is a solid reason to reject abstention.

b. The creation of a novel exception on the basis of contract or tort theories is not

within the providence of a state court.

c. This is a federal question and not a state question per *Moses* factor number 1

against abstention

17

d. There are no *In rem* property issues that would be in favor of abstention *Moses* factor 2 so this is against abstention..

e. The federal forum is just as convenient as State Court as to *Moses* factor 3.

f. The failure to address this question has resulted in three state court actions and there will likely be piecemeal litigation with pandora's box with many pending cases contemplated to ask courts to interpret party bylaws so the *Moses* factor 4 must be against abstention.

g. There is a preference in favor of jurisdiction being taken as to the *Moses* factor 5.

h. While there is theoretically the ability to obtain relief in the State Court on appeal, the matter would be moot before state litigation is exhausted as a political committee term is merely two years. Therefore, it is unlikely a final interpretation of the federal question by a state court will occur in time to afford complete relief before February of 2025.

67. The 6ᵗʰ Circuit in *Heitmanis, supra* next rejected the abstention doctrine under *Railroad Commission v. Pullman*, 312 U.S. 496, 85 L. Ed. 971, 61 S. Ct. 643 (1941) which would also be wholly inapplicable here.

68. The court then decided that portions of the Michigan Election law were invalid that regulate the i internal workings of the party—this would apply to the very provision that Judge Rossi relied upon in his Kent County ruling as articulated from the bench—MCL 168.597.

69. There are some clear precedents cited including:

In *Democratic Party of United States v. Wisconsin*, 450 U.S. 107, 67 L. Ed. 2d 82, 101 S. Ct. 1010 (1981), the Court held that the State of Wisconsin could not bind a national political party to a state statute permitting cross-over voting in a primary. The Court noted that "a State, or a court, may not constitutionally substitute its own judgment for that of the Party. A

18

political party's choice among the various ways of determining the makeup of a State's delegation to the party's national convention is protected by the Constitution." *Id.* at 123-24. Heitmanis v Austin, 899 F2d 521, 529 (CA 6, 1990)

70. More specifically to the issues at hand, the *Heitmanis* Court stated:

Similarly, in *Eu*, 109 S. Ct. at 1024, the Supreme Court noted that the California law requiring political parties to establish official governing bodies at the county level and specifying the members of these bodies "*limits a political party's discretion in how to organize itself, conduct its affairs, and select its leaders*." In contrast to Tashjian, where the issue was whether the party procedures could allow non-party members to vote in the primary, the Supreme Court in *Eu* noted that the associational rights involved there -- the right of party members to associate with [**26] one another to select their party leaders -- "are much stronger than those we credited in Tashjian." Id. With such strong rights burdened, the state may infringe upon that right only where it has a compelling state interest and its laws are narrowly tailored to serve that interest. Id. at 1019-20. *Heitmanis v Austin*, 899 F2d 521, 529 (CA 6, 1990) [Emphasis added]

71. The organizing of itself, conduct of its affairs and the selection or removal of leaders are

clearly internal matters that must remain free from state action.

72. The Court then recalled its earlier decision referenced above as to the second case in

which the 6th Circuit has applied the 1st Amendment Freedom of Association:

In *Ferency v. Austin*, 666 F.2d 1023 (6th Cir. 1981), this court found that the Michigan Election Law was unconstitutional insofar as it controlled "the method of selection of the Michigan delegates to the Democratic National Convention" in violation of Democratic National Party rules. The instant case involves similar provisions of the Election Law -- controlling selection of delegates at state and county conventions and the makeup of county executive committees of the political parties -- which conflict with State Party rules. We hold that these portions of the Election Law significantly burden the right to freedom of association of the State Party and its members. By compelling the State Party to automatically place incumbent legislators and nominees to county offices as delegates, the Election Law infringes upon the right of political parties to choose [**27] a method for selection of their party nominees. By requiring the county executive committees to be made up of an equal number of elected delegates and legislators, *the Election Law directly controls the internal structure of the political parties.* Since Michigan has not demonstrated any compelling state interest for such a significant restriction of the freedom of association, we conclude that the relevant parts of the Election Law are facially unconstitutional. As such, we need not reach the remaining questions of whether the Election Law violates the one [*530] person, one vote requirement of the Fourteenth Amendment and the Voting Rights Act. *Heitmanis v Austin*, 899 F2d 521, 529-30 (CA 6, 1990) [Emphasis Added]

19

73. While the matter at hand is a request by parties for courts to enter into the case by case application of judicial construction and interpretations of contracts rather than a legislative intrusion, the result is the same—a clear violation of the US Constitution.

74. The state brought up another argument and claimed there was not 'case or controvesey" because the state claimed it would not enforce the Election Rules against the national party but that was REJECTED because the *Heitmanis* Court stated that the Election law that regulated the state party was a conflict with the STATE party was unconstitutional on its face.

75. The point just made is very significant because there can be no distinction made that *Heitmanis* does not apply as it was only a conflict between state law and national party rules—as claimed by litigants in the state court actions.

76. As a result a large swath of the Michigan Election Law which generally regulated the political party conventions was held unconstitutional.

77. That ruling does not render any portion outside the scope of the direct challenge valid merely because they were outside the scope of the challenge if they violate the constitutional limitations of state action to regulate the political affairs.

78. Likewise, there is NOTHING different between the state acting with a legislative strong arm or a judicial one that would render the activism into party affairs constitutional. *This law is settled so next we must turn to the new case or controversy asserted by the defendants' in state court.*

## THE FIRST CONTROVERSEY: CONTRACT CLAIMS

79. The concept that the non-intervention into internal affairs of a political party doctrine may have an exception in contract first was presented in the dicta of 2023-0169-CZ in

20

the opinion of Circuit Judge Curtis Bell after he had already decided that the matter as presented before him was barred by the O'Brien, supra decision.

80. In the opinion in 23-0169-CZ, Judge Bell *cited American Independent Party v Secretary of State*, 397 Mich 689 (1976) and stated that the outcome was that the "Director of Elections correctly left to the American Independent Party the resolution of the intraparty dispute" because" the convention itself is the proper forum for determining intraparty disputes" Id at 696 (Opinion at Page 12).

81. This statement of law by Judge Bell was a significant factor in the precinct delegates of Kalamazoo assembling in a convention and while the decision also agreed that the judge would not interfere in the internal workings of the party its suggestion was well founded as a method for the party to resolve its dispute internally by returning to the fundamental right of assembling in convention.

82. The Plaintiffs have bought a claim for breach of contract. The claim originates from a line of cases that provides for bylaws in real property associations in which people invest and buy homes and the unincorporated association begins to regulate the homes pursuant to bylaws.

83. There is no federal court or appellate state court that has ever applied the doctrine to a political party.

84. Bylaws are not written as contracts with offer, acceptance and consideration.

85. The members are elected and do not join after approving the bylaws.

86. The primary case relied upon by the defendants is Conlin v Upton, 313 Mich App 243, 245; 881 NW2d 511 (2015)which is a real property dispute with a restrictive covenant that runs with the land requiring that the property is subject to the bylaws of a property owners association and its bylaws.

21

87. The analogy of a contract fails as unlike the bylaws regulating real estate as a deed restriction to a property owners association which are incorporated as a covenant restriction contained within the deed of real property law—there is no interest in real property present in a political committee whose members are acting on behalf of their precinct to create policy and act politically for the advancement of the interests of the collective.

88. The political association by its definition is an expression of the will of the collective which has the ultimate power in the authority granted to the association by the people.

89. When the leadership no longer has the confidence of the people in any parliamentary system (of which all Republican Party Committees are) then there is always the authority to reconstitute its leadership. This is the inherent right at a convention.

90. This line of real property case is distinguishable also because of the "political question" doctrine which clearly applies to this matter.

91. Even more preposterous is that claim by Deperno and Sackett that the executive committee can *unilaterally* amend the political committee bylaws after purging members and within the new bylaws affecting the rights of the precinct delegates to their detriment and impose restrictions on speech and association of members with financial penalties of punitive damages of $50,000 per incident.

92. This abhorrent behavior is then justified as a contractual right.

93. Even if all of the contract claims were true the doctrine that intra-party disputes are non-justiciable would still apply based on constitutional reasoning.

94. The defendants have also cited a Michigan case El-Khalil v Oakwood Healthcare, Inc, 504 Mich 152, 156-57; 934 NW2d 665 (2019) for the notion violation of bylaws are a breach of contract. However, in the referenced case, the Medical Staff Bylaws were part

22

of plaintiff's employment agreement. This 'anchoring' document--like a deed--

incorporated the bylaws as a contractual term into a written agreement for employment.

95. No deed or employment contract is present as part of any written agreement by delegates
agreeing to abide by the—in fact they have the power collectively to amend and interpret
the bylaws.

96. There is NOTHING in that *El-Khalil* case that suggests the bylaws of a political party
are a contract or that this somehow changes the constitutional restriction of the court as
state action interfering into the internal disputes of a political party.

## THE SECOND CONTROVERSEY: TORT CLAIMS

97. There is a second method which has been tried by the defendants to have courts interfere
with the intra-party-political activities of the party which is based on a tort action.

98. The participants in the Kalamazoo political party include delegates elected at the primary
by their precinct together with some delegates that were elevated by the committee to fill
vacancies.

99. The precinct delegates formed an executive committee at the convention.

100.    Later, a faction held another convention and claimed that they had properly
removed the defendant's faction of the County party from the executive committee.

101.    The new committee with Plaintiffs Rodney Halcomb, Kerry Lynn Elieff, Emily
Crawford and Robyn Matson began to conduct business as the Kalamazoo Republican
County Party.

102.    They were immediately recognized by the 4th Congressional District and the
matter was brought to the State Committee for recognition so that the party could gain

23

access to the state filing system as the official county committee of the Republican party and begin to raise money for campaigning.

103. The actions of the officers have resulted in various tort claims against them including:

104. After recognition by the state committee, correspondence to the Secretary of State to inform them of the determination by the state committee resulted in the suit against Copas, Hartman and Karamo.

105. The Tort actions and any judicial decrees will have a real effect of bringing state action to regulate and interpret who is right and wrong as to the internal matters of the party.

106. The action of entering a judgment for or against a party in tort will result in a chilling of protected political activity which includes disputes within a party as there are changes of direction in policy or leadership. The enforcement of a judgment would as well.

107. A tort claim arising solely from protected political activity is not justiciable.

108. The officers of the new faction had a good faith basis for their claim—the authority of the delegate convention.

109. The party through its 4th District Committee and the Michigan Republican State Committee reviewed the claims and decided it by votes of the political committees who they recognized.

110. There is no 'right' of an officer or member of the executive committee to remain in leadership.

24

111. A dispute as to leadership does not constitute a tortious interference with business relationships even if the dispute affects public perception that should give rise to a private cause of action or a cause of action by one faction of the committee against another.

WHEREFORE, the plaintiffs pray this Honorable Court enter a declaratory judgment setting forth the clear distinction that under the 1st Amendment and 14th Amendment to the US Constitution that:

1) The claim of a contract breach of bylaws does not permit state court action to interfere into the internal disputes of a political committee or interpret the bylaws.

2) The claim of a political committee, by its members or officers or committee, arising from the political activity of members, or a faction of members, of a political committee does not permit state court action to access damages.

3) That the disputes involved in the complaint in 24-0026-CZ in the State of Michigan in the Circuit Court for the County of Kalamazoo are not justiciable.

Dated: May 28, 2024

/s/ Daniel J. Hartman
Daniel J. Hartman (P52632)

Dated: May 28, 2024

/s/ Lester N. Turner
Lester N Turner (P21632)

## VERIFICATION OF COMPLAINT

The above allegations are true to the best of my knowledge, information and belief.

Dated: MAY 28, 2024

/s/ Danuel J. Hartman
Daniel J. Hartman