## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JAMES M. COPAS, DANIEL J. HARTMAN,
RODNEY  HALCOMB,  KERRY  LYNN
ELIEFF, EMILY CRAWFORD, and ROBYN
MATSON

       Plaintiffs

v.

KELLY SACKETT, and THE KALAMAZOO
COUNTY REPUBLICAN COMMITTEE

       Defendants,

And

MICHIGAN REPUBLICAN STATE
COMMITTEE

       Intervening Defendant.

_____/

Case No. 1:24-cv-00555

HON. PAUL L. MALONEY

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR
## RULE 11 and SECTION 1927 SANCTIONS

## ORAL ARGUMENT REQUESTED

# <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ............................................................................. ii

EXHIBIT LIST ............................................................................................... iv

INTRODUCTION ............................................................................................1

BACKGROUND ..............................................................................................2

FACTS .............................................................................................................3

    1.    Precinct delegates...............................................................................3

    2.    Hillsdale County litigation: Hillsdale County Republican
        Executive Committee v Wiseley et al.....................................................4

    3.    First Kalamazoo County litigation: Pritchett-Evans and Harris v
        KGOP et al...........................................................................................5

    4.    Kent County litigation; Pego et al v Karamo..........................................8

    5.    Second Kalamazoo County litigation: KGOP et al v Halcomb et al ...................11

LAW and ARGUMENT ................................................................................11

    1.    Rule 11 and Sec. 1927 sanctions serve to deter baseless filing that
        are unsupported by law or fact...........................................................11

    2.    Plaintiffs' claims are baseless and Rule 11 and Sec. 1927 sanctions
        are appropriate ..................................................................................15

        A.    This Court does not have jurisdiction; Plaintiffs have not
            asserted a federal question; Rule 12(b)(1) ................................15

        B.    Plaintiffs are trying to circumvent the normal state
            appellate process by filing a collateral attack in federal
            court despite the abstention rule .............................................17

            (1).   *Rooker-Feldman* doctrine ............................................18
            (2).   *Colorado River* doctrine ............................................19

        C.    Plaintiffs failed to properly serve Defendant KGOP; Rule
            12(b)(5) ...................................................................................22

CONCLUSION ..............................................................................................28

CERTIFICATE OF COMPLIANCE...............................................................28

i

## <u>TABLE OF AUTHORITIES</u>

**<u>Federal Cases</u>**                                                                                                                <u>Page</u>

*American Telecom Co., L.L.C. v. Republic of Lebanon*, 501 F.3d 534 (6th Cir. 2007) ...............15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .........................................................................................22

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ...................................................................22

*Brown v. Bargery,* 207 F.3d 863 (6th Cir. 2000) ...........................................................................15

*Bynum v. Mich. State Univ.,* 117 F.R.D. 94 (W.D. Mich. 1987) ...................................................13

*Cartwright v. Garner*, 751 F.3d 752 (6th Cir. 2014) .....................................................................15

*Chambers v. NASCO, Inc.,* 501 U.S. 32 (1991)..............................................................................14

*Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976) ..................... 2, 15, 18-21

*Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384 (1990)...............................................................13

*Coppedge v. United States,* 369 U.S. 438 (1962) ..........................................................................14

*Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59 (1978)............. 15-16

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) ................... 2, 17-18, 21

*Driskell v. Gen. Motors Corp.,* No. 04-40224, 2006 WL 901179 (E.D. Mich. Mar. 27, 2006) ............................................................................................................................................13

*Eisenberg v. Univ. of New Mexico,* 936 F.2d 1131 (10th Cir. 1991 ..............................................14

*Estate of Cornell v Bayview Loan Servicing, LLC,* 908 F.3d 1008 (6th Cir. 2018) .....................16

*Ferency v Austin*, 666 F.2d 1023 (6th Cir. 1981) ..........................................................................16

*First Bank of Marrietta v. Hartford Underwriters Ins. Co.,* 307 F.3d 501, 511-12 (6th Cir. 2002) ...............................................................................................................................................14

*Foster-El v. Beretta U.S.A. Corp.*, 163 F. Supp. 2d 67 (D.D.C. 2001)..........................................19

*Gilreath v. Clemens & Co.,* 212 F. App'x 451 (6th Cir. 2007 ......................................................14

*Great Lakes Educational Consultants v. Federal Emergency Management Agency,* 582 F. Supp. 193 (W.D.Mich.1984)..............................................................................................................16

*Green v. Aranas*, 775 F. App'x 310 (9th Cir. 2019) ......................................................................18

DePerno Law Office, PLLC ● 951 W. Milham Avenue, PO Box 1595 ● Portage, MI 49081
(269) 321-5064 (phone) ● (269) 321-5164 (fax)

*Gregorio v. Hoover*, 238 F. Supp. 3d 37 (D.D.C. 2017) ...............................................18

*Heitmanis v Austin*, 899 F.2d 521 (6th Cir. 1990)........................................................16

*Int 'l Union, UAW v. Aguirre,* 410 F.3d 297 (6th Cir. 2005 ........................................13

*INVST Fin. Group, Inc. v. Chem-Nuclear Sys., Inc.,* 815 F.2d 391 (6th Cir. 1987).....................13

*Jaffery v. Atlantic County Prosecutor's Office*, 695 F. App'x 38 (3d Cir. 2017).........................18

*Lawler v. Marshall,* 898 F.2d 1196 (6th Cir. 1990)........................................................15

*Mann v. G & G Mfr., Inc.,* 900 F.2d 953 (6th Cir. 1990) ................................................13

*McMillan v. Jones Transfer Co.,* No. 88-CV-40267, 1989 WL 205625 (E.D. Mich. July 26, 1989) ...............................................................................................13

*Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987).......................................................16

*Mihalik v. Pro Arts, Inc.,* 851 F.2d 790 (6th Cir. 1988) ................................................13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ...............................19

*Nabkey v. Gibson,* 923 F. Supp. 117 (W.D. Mich. 1990) ...............................................14

*Neitzke v. Williams,* 490 U.S. 319, 325 (1989) ...........................................................15

*O'Brien v Brown*, 409 U.S. 1 (1972).....................................................................27

*Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923).....................................................2, 17-18, 21

*Sheehan v. Koonz*, 102 F. Supp. 2d 1 (D.D.C. 1999) ....................................................19

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)............................................15

*Triad Assocs., Inc. v. Chicago Housing Auth.,* 892 F.2d 583, 596 n.10 (1989), cert. denied 498 U.S. 845 (1990)...............................................................................................14

*United States v. Ritchie*, 15 F.3d 592 (6th Cir. 1994)...................................................15

*Wolken v. Lufkin*, 1995 WL 704773 (N.D. Ill. Nov. 28, 1995) ..........................................20-21

**<u>Michigan Supreme Court Cases</u>**

*El-Khalil v. Oakwood Healthcare, Inc.,* 504 Mich. 152 (2019) ..........................................7, 23, 27

*Mayo v Great Lakes Greyhouse Lines*, 333 Mich 205; 52 NW 2d 665 (1952) ...........................10

DEPERNO LAW OFFICE, PLLC • 951 W. MILHAM AVENUE, PO BOX 1595 • PORTAGE, MI 49081
(269) 321-5064 (PHONE) • (269) 321-5164 (FAX)

**Michigan Court of Appeal Cases**

*Allied Supermarkets, Inc. v. Grocer's Dairy Co*. 45 Mich App 310; 206 NW2d 490 (1973) .......10

*Conlin v Upton*, 313 Mich App 243; 881 NW2d 511 (2015) ...........................................10, 23, 27

*Kauffman v Chicago Corp*, 187 Mich App 284, 466 NW2d 726 (1991)..........................10, 23, 27

**Michigan Lower Court Cases**

*Hillsdale County Republican Executive Committee v Daren Wiseley et al*., Case No. 2022-688-CZ, Hillsdale County Circuit Court. ............................................................. 4-5

*Sabrina Pritchett-Evans and Kimberly Harris v Republican Party of Kalamazoo, et al*, Case No. 2023-0169-CZ, Kalamazoo County Circuit Court.................................................. 5-6, 11

*Malinda Pego et al v Kristina Karamo*, Case No. 2024-658-CZ, Kent County Circuit Court  .............................................................................................................. 8, 17-18

*KGOP et al v Halcomb et al*, Case No. 2024-0020-CZ, Kalamazoo County Circuit Court  .............................................................................................................. 11, 17-18

**Federal Statutes**

28 USC § 1331...............................................................................................................16

28 USC § 1746.................................................................................................................3

28 USC § 1927....................................................................................................11, 13, 15

**Michigan Statutes**

MCL § 168.1 *et seq*.........................................................................................................26

MCL § 168.599.................................................................................................................6

MCL § 168.622...........................................................................................................4, 23

MCL § 168.624...........................................................................................................3, 24

MCL § 169.201 *et seq*....................................................................................................25

MCL § 450.1231............................................................................................................10

MCL § 450.4210............................................................................................................10

**Federal Rules of Civil Procedure**

Rule 5 ............................................................................................................................12

iv

Rule 11 .................................................................................................. 11, 13-15, 22

Rule 11(b) ................................................................................................. 12-13

Rule 11(c) ........................................................................................................3

Rule 12(b)(1) ...........................................................................................2, 15, 18

Rule 12(b)(6) ...................................................................................................2, 18

**Michigan Court Rules**

MCR 2.116(C)(8) ...............................................................................................7, 23

**Other Citations**

James Bedell, *Clearing the Judicial Fog: Codifying Abstention*, 68 Case W. Res. L. Rev. 943, 946 (2018) ..............................................................................................21

## EXHIBIT LIST

ECF No. 1:       Verified Complaint ..........................................................................16

ECF No. 8-1:    Hillsdale County, *Order Denying Defendant's Motion to Vacate
                *Order to Show Cause* ...........................................................................5

ECF No. 10      Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1), (5),
                (6), and (7) ..........................................................................................2

ECF No. 11      Brief in Support of Defendants' Motion to Dismiss Pursuant to
                Rule 12(b)(1), (5), (6), and (7)............................................................2

ECF No. 11-1:   Hillsdale County; *Opinion and Order Granting Plaintiff's Motion
                for Default Judgment and Motion for Summary Disposition*..............5

ECF No. 11-2:   Hillsdale County; *Declaration Judgment* ...........................................5

ECF No. 11-3:   Hillsdale County, Order for Contempt of Court ...................................5

ECF No. 11-4:   Hillsdale County docket sheet ..............................................................5

ECF No. 11-5:   Kalamazoo County, *Opinion and Order*................................................6

ECF No. 11-6    Kalamazoo County, COA 371433 docket sheet .....................................8

ECF No. 11-7:   Kent County, *Complaint* ......................................................................8

ECF No. 11-8:   Kent County, *Order Granting Plaintiffs' Motion for Preliminary
                Injunction* .............................................................................................9

ECF No. 11-9:   Kent County, *Partial Transcript* (May 15, 2024)..............................10

ECF No. 11-10:  Kent County, *Order Granting Plaintiffs' Motion for Summary
                Disposition and Final Judgment for Declaratory and Injunctive
                Relief*...................................................................................................10

ECF No. 11-11:  Kent County, COA 371299 docket sheet..............................................11

ECF No. 11-12:  Kalamazoo County, *Verified Complaint and Jury Demand* ...............11

ECF No. 11-13:  Kalamazoo County, *Opinion and Order*..............................................11

ECF No. 11-14:  Kalamazoo County, COA 371432 docket sheet ...................................11

ECF No. 11-17:  KGOP bylaws ................................................................................23-24

ECF No. 11-18:  MIGOP bylaws .....................................................................................25

ECF No. 11-19:  Act 116 of 1954 index...........................................................................26

DePerno Law Office, PLLC ● 951 W. Milham Avenue, PO Box 1595 ● Portage, MI 49081
(269) 321-5064 (phone) ● (269) 321-5164 (Fax)

## INTRODUCTION

Plaintiff's Complaint includes claims that are indisputably meritless, lack the requisite specificity of claims, and clearly were filed without Plaintiffs or their attorneys conducting a reasonable inquiry into the law. Had Plaintiffs or their attorneys undertaken a reasonable inquiry into the law, they undoubtedly would have discovered that many claims lack the requisite factual and legal predicate to support those claims. Because Plaintiffs or their attorneys have refused to withdraw, dismiss, or amend his complaint in response to the Defendants serving this motion and brief upon Plaintiffs' attorneys, this Court should grant sanctions against Plaintiffs and their attorneys, jointly and severally, as the Court deems appropriate.

## BACKGROUND

On February 18, 2023, Kristina Karamo ("Karamo") was installed as the Chairman of the Michigan Republican Party ("MIGOP"). Karamo appointed Plaintiff Dan Hartman as chief counsel for MIGOP. Karamo appointed Plaintiff James Copas as executive for MIGOP. Their stated goal was to "burn down the party" and "take over" county Republican committees. Plaintiffs Halcomb, Elieff, Crawford, and Maxson[1] are Karamo loyalist appointed to "takeover" the Kalamazoo County Republican Committee ("KGOP"). Other people were appointed in these roles in other counties to take over their county committees. From the first day, they created chaos and strife. Their philosophy was that raising money and getting Republicans elected was not important. Instead, they pushed a radical agenda to "purify" the party; and only when the party was "purified" would the party be able to attract the "right kind" of donors needed to transform the party into their image.

---

[1]     Plaintiffs have misspelled Robyn Maxson's name wrong as "Matson" in this case.

1

In some counties the takeover was easy. In other counties, such as Kalamazoo County, they met resistance and their "takeover" was stopped. Plaintiffs also met resistance at the state level within the MIGOP through the Michigan Republican Party Executive Committee and at the national level through the Republican National Committee ("RNC") when Karamo, Hartman, Copas, and other loyalists were removed from leadership roles. Ultimately, all Plaintiffs were all removed from leadership roles at the state and county levels. To counter, Plaintiffs, either directly or through their surrogates, started litigation over party leadership. Having not achieved their desired outcome, Plaintiffs have now filed this frivolous case in federal court hoping the federal court will reverse the state court and reinstall them and their policies; thus, allowing them to continue their "takeover" and transformation of the Republican Party in the State of Michigan. However, their relief requested is inconsistent with state law, case law, and party bylaws.

As outlined in Defendants' motion to dismiss [ECF No. 10, PageId.384] and supporting brief [ECF No. 11, PageId.385-419], Plaintiffs case must fail for multiple reasons. For starters, this Court does not have jurisdiction because Plaintiffs have failed to properly plead a federal question.[2] Second, this Court does not have jurisdiction[3] over these claims under both the *Rooker-Feldman* doctrine[4] and the *Colorado River* doctrine.[5] Third, even if the Plaintiffs could somehow overcome these barriers, their complaint fails to state any claim upon which relief can be granted.[6] As such, Plaintiffs and their attorneys ignored information available to them and basic legal research would have revealed that their complaint is factually and legally baseless.

---

[2]        Fed. R. Civ. P. 12(b)(1).

[3]        Fed. R. Civ. P. 12(b)(1) and (b)(6).

[4]        *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

[5]        *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 818 (1976).

[6]        Fed. R. Civ. P. 12(b)(6).

DePerno Law Office, PLLC ● 951 W. Milham Avenue, PO Box 1595 ● Portage, MI 49081
(269) 321-5064 (phone) ● (269) 321-5164 (Fax)

Plaintiffs filed the complaint in the instant case on May 29, 2024. The complaint was signed by Plaintiffs' attorneys. Dan Hartman is a plaintiff in this case. He is also an attorney licensed to practice in Michigan. Mr. Hartman signed a verification swearing that "[t]he above allegations are true to the best of my knowledge, information and belief." Unsworn declarations in federal courts have the same effect "under penalty of perjury" as if they were notarized. See 28 U.S.C. § 1746.

This rule applies here. Dan Hartman verified the complaint with an unsworn declaration.

Defendants, by their attorney, served Plaintiffs' attorney with a copy of this brief on July 4, 2024. Undersigned counsel advised Mr. Hartman and Mr. Turner that the motion would not be filed if Plaintiffs promptly dismissed the complaint. In accordance with Rule 11(c)(2), 21 days have passed since Defendants served their motion with accompanying brief. Plaintiffs have not withdrawn, amended, or otherwise dismissed their complaint against within 21 days.

## FACTS

### 1. Precinct delegates

In Michigan, precinct delegates are not "elected officials." Rather, they are party positions selected in the August primary election in even-numbered years.[7] A person who wishes to seek a precinct delegate position must file an Affidavit of Identity (in duplicate) with the clerk of his or her county of residence.[8] County clerks then place precinct delegate races on the primary ballot as a convenience to the political parties. Once selected, a precinct delegate has only four delegated powers:

---

[7]     MCL 168.624(2)

[8]     *Id.*

DePerno Law Office, PLLC ● 951 W. Milham Avenue, PO Box 1595 ● Portage, MI 49081
(269) 321-5064 (phone) ● (269) 321-5164 (Fax)

(1)  <u>Elect state delegates</u>. Precinct delegates shall convene at a properly called county convention[9] called by the chairman of the county executive committee (*i.e.* county political party) to select "state delegates" to attend state party conventions; typically, one winter convention in odd-numbered years and one summer convention in even-numbered years.

(2)  <u>Elect the County Executive Committee</u>. Precinct delegates shall convene at a properly called county convention within 30 days of the November general election to nominate and elect the executive committee of the county party.[10]

(3)  <u>Fill precinct delegate vacancies</u>. At a county convention properly called by the chairman of the county political committee, precinct delegates may fill open precinct delegate vacancies on a permanent basis.

(4)  <u>Other matters</u>. At a county convention properly called by the chairman of the county political committee, a precinct delegates may vote on other matters properly brought to the county convention.

Beyond these four delegated powers, precinct delegates are conferred no other rights, duties, or privileges under state law.

**2.    Hillsdale County litigation: *Hillsdale County Republican Executive Committee v Wiseley et al***

On October 12, 2022, the Hillsdale County Republican Executive Committee filed a lawsuit against several individual members of the Hillsdale Republican Party regarding violations of bylaws and party leadership. *Hillsdale County Republican Executive Committee v Daren Wiseley et al*., Case No. 2022-688-CZ, Hillsdale County Circuit Court. Judge Michael R.

---

[9]      Only the chair of the county executive committee can call a county convention. No other conventions are legal or authorized. MCL 168.622.

[10]     MCL 168.622

DePerno Law Office, PLLC ● 951 W. Milham Avenue, PO Box 1595 ● Portage, MI 49081
(269) 321-5064 (phone) ● (269) 321-5164 (Fax)

Olsaver accepted jurisdiction of the case and ultimately granted the plaintiffs' motion for summary disposition [ECF No. 11-1, PageId.420-24]. The court held that a county convention held on August 11, 2022 was "was not authorized by the bylaws" and that certain actions taken by the defendants to "disavow" plaintiffs were in breach of the bylaws. [*Id*. at 4].

On that same day, April 28, 2023, the court entered a Declaratory Judgment [ECF No. 11-2, PageId.425-28] and ordered that the defendants were enjoined from holding themselves out as officers of the Hillsdale County Republican Executive Committee. [*Id*. at 3]. However, defendants continued to acts as officers in violation of the court's order. They also gained the support of MIGOP chair Kristina Karamo and her agent Dan Hartman.

On December 28, 2023, the court entered an Order for Contempt of Court [ECF No. 11-3, PageId.429-35]. The court stated that "[t]he evidence establishes that defendants Mosby, Smith and Gritzmaker, as well as respondents [Kristina] Karamo and the Michigan Republican State Committee violated the Court's April 28, 2023 order in the ways described above. These actions impair the functioning of the Court because defendants and respondents have acted in direct defiance of the order by engaging in conduct enjoined by the order." [*Id*. at 7]. The court subsequently denied the defendants' motion to vacate order to show cause. [ECF No. 8-1, PageId.333-340]. This case is ongoing with the most recent filings being made on June 14, 2024 regarding the plaintiffs' motion for attorney fees. [ECF No. 11-4, PageId.436].

**3.**     **First Kalamazoo County litigation: *Pritchett-Evans and Harris v KGOP et al***

On March 29, 2023, surrogates of Plaintiffs filed a lawsuit in Kalamazoo County Circuit Court challenging the authority of the KGOP to remove certain disruptors and chaos agents from the executive committee and as precinct delegates and for defamation. *Sabrina Pritchett-Evans and Kimberly Harris v Republican Party of Kalamazoo, et al*, Case No. 2023-0169-CZ,

DePerno Law Office, PLLC ● 951 W. Milham Avenue, PO Box 1595 ● Portage, MI 49081
(269) 321-5064 (phone) ● (269) 321-5164 (Fax)

Kalamazoo County Circuit Court. On August 10, 2023, Judge Curtis J. Bell entered an *Opinion and Order* [ECF No. 11-5, PageId.437-61] dismissing counts 1-3 and allowing count 4 (defamation) to continue.

> ➢ In count 1, the plaintiffs claimed that the defendants violated MCL 168.599 by filling open seats on the executive committee after certain members resigned.

> ➢ In count 2, the plaintiffs claimed that defendants were state actors and violated the Michigan Constitution's equal protective clause and due process.

> ➢ In count 3, the plaintiffs claimed that defendants breached their fiduciary duties by removing plaintiffs from the executive committee and as precinct delegates.

> ➢ In count 4, the plaintiffs claimed that defendants made defamatory statements about plaintiffs.

As to count 1, the court determined that "the Party is allowed to fill those seats as it determines under its customs and traditions." [*Id.*, at 19.] The court further stated that the question of removal of delegates "falls under the political questions doctrine" [*Id.*] and the court declined subject matter jurisdiction.

The court dismissed count 2 because defendants were not state actors. "To claim constitutional relief, the entity that Plaintiffs claim relief from must be a State actor or entity performing State actions. Defendants in this case are not State actors. Furthermore, they were not performing State actions when deciding whom their intraparty delegates will be. Therefore, Plaintiffs are unable to assert claims for constitutional relief, and Defendants' Motion for Summary Disposition regarding this count is granted." [*Id.*, at 22.]

The court dismissed count 3 stating it was an intraparty dispute and fell within the political questions doctrine. [*Id.*, at 23.] The court stated, "there does not exist cases in Michigan

DePerno Law Office, PLLC • 951 W. Milham Avenue, PO Box 1595 • Portage, MI 49081
(269) 321-5064 (phone) • (269) 321-5164 (fax)

where Courts have subject-matter jurisdiction to hear claims of fiduciary duty regarding a political party's internal disputes."[*Id.*]

The court accepted jurisdiction of count 4 and allowed the slander claim to proceed, stating that "defamation allegations are heavily fact specific. With discovery incomplete, analysis of these issues is premature and not subject to summary disposition." [*Id.* at 24.]

Thus, the Kalamazoo County court accepted subject matter jurisdiction on counts 2 and 4 and declined jurisdiction on counts 1 and 3. The court concluded by stating that "[t]he more challenging question concerns whether there is a contractual claim based on a clear violation of the bylaws in the removal of Ms. Harris. As discussed hereinabove, this is not party of Plaintiffs' Complaint." [*Id.* at 25.] The court had previously stated:

> In the instant case, Plaintiffs do not assert a claim of breach of contract by the KGOP's of the Bylaws. However, it must be noted that Michigan has recognized that contracts can be formed by application of Bylaws. In *El-Khalil v. Oakwood Healthcare, Inc.,* 504 Mich. 152, 164 (2019) the Michigan Supreme Court decided a case where a plaintiff pleaded a claim for breach of contract, arguing that defendants breached the Bylaws. The Court states that "'[a] party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in injury to the party claiming breach.'" *Id.* The Court continued, "[p]laintiff asserts that the denial of his privileges was in breach of the bylaws . . . [p]laintiff's assertion is legally sufficient for his breach-of-contract claim to survive MCR 2.116(C)(8)." *Id.* at 166. Even though in the instant case Plaintiffs did not assert a breach of contract claim, it is possible that a breach of contract claim involving KGOP' s breach of its Bylaws could be adjudicated by this Court. This would be true only if the question was not one concerning internal political decisions.

[*Id.*, at 17.]

The court ultimately dismissed count 4 (defamation) on defendants' renewed motion for summary disposition prior to trial because plaintiffs could not establish facts to support their slander claim. Defendants also filed a motion for sanctions on plaintiffs' frivolous claims. The court granted the motion in part and denied it in part, ordering plaintiffs to pay costs but not

DePerno Law Office, PLLC • 951 W. Milham Avenue, PO Box 1595 • Portage, MI 49081
(269) 321-5064 (phone) • (269) 321-5164 (Fax)

attorney fees. Defendants appealed the denial of attorney fees on June 24, 2024. [ECF No. 11-6, PageId.462-63].

**4.**     **Kent County litigation;** *Pego et al v Karamo*

On January 6, 2023, Kristina Karamo was removed as chair of the MIGOP and Daniel Hartman was removed as chief counsel of the MIGOP for malfeasance. James Copas was terminated as executive director. Robert Owens was terminated as director of communications. However, they refused to leave their office. Instead, they claimed this was a "disinformation campaign."



Karamo, Hartman, Copas, and Owens refused to turn over access to bank accounts, social media, and other data. On January 20, 2024, the acting chair, Malinda Pego filed a lawsuit in Kent County circuit court to obtain a preliminary injunction [ECF No. 11-7, PageId.464-79]. *Malinda Pego et al v Kristina Karamo*, Case No. 2024-658-CZ, Kent County Circuit Court. Judge J. Joseph Rossi accepted subject matter jurisdiction and on February 27, 2024 entered an *Order*

DePerno Law Office, PLLC • 951 W. Milham Avenue, PO Box 1595 • Portage, MI 49081
(269) 321-5064 (phone) • (269) 321-5164 (Fax)

*Granting Plaintiffs' Motion for Preliminary Injunction* [ECF No. 11-8, PageId.480-81]. The order prohibited Karamo from "(3) conducting, or attempting to conduct, any business in the name of the Michigan Republican State Committee or the Michigan Republican Party" and that "[t]his Order is effective immediately, and has retroactive application to any actions after January 6, 2024 by Ms. Karamo purporting to act as chair."

At that time, the court opened discovery and set the matter for trial on June 10, 2024. Following a series of depositions, the plaintiffs filed a motion for summary disposition on April 19, 2024. A hearing was conducted on May 10, 2024 and continued to May 15, 2024 at which time the court issued its ruling from the bench, granting plaintiffs' motion, and cancelling the trial. Judge Rossi made the following ruling:

> THE COURT: All right. And my ruling at this time will be to grant the plaintiff's motion under 2.116(C)(10) as to the removal of Chairwoman Karamo and to deny the motion without prejudice as it regards to the proposed amendments of the bylaws as that amendment was rendered moot by the vote to remove the chairwoman which did achieve the 75 percent requirement stated in the original bylaws and has not been brought by either side before the Court except as it is tangential to the removal of the chairwoman which has been and remains the central issue before the Court.
>
> * * *
>
> That then brings us to the 23 bylaws. The bylaws of course have to be consistent with the 24 Michigan statute, but once they are written and consistent with the Michigan statute, Michigan law clearly states that they do have binding effect on the members of the party. That is, they're not just guidelines or rough, you know, rules to follow subject to everyone's interpretation. But instead, that they gain legal force by their enactment. And I had a great quote and I was going to read that -- there it is. And I'm citing from my authority on that. This is from *Colin versus Upton*, 313 Mich App 243, opinion of the Michigan Court of Appeals in 2015. And that states here, page 254, that:
>
>> "Generally, an entity's bylaws or membership agreement may provide for the regulation and management of its affairs as long as the provision is not inconsistent with law . . . ", that is, it must be consistent with the Michigan statue that speaks to the same subject, ". . . or the articles authorizing the entity."

Again, not necessarily applicable here because we don't have any constitutional articles authorizing the organization of the political party. It's statutory. So it only has to be consistent with the statute. And these bylaws are consistent with the statute. They organize a state political committee. And that cites MCL 450.1231 and Michigan Compiled Law 450.4210.

The opinion goes on to state "When validly promulgated, and entity's bylaws or similar governing instrument will constitute a binding contractual agreement between the entity and it's members." Citing see *Mayo v Great Lakes Greyhouse Lines*, 333 Mich 205, page 214, 52 N.W.2nd 665, a 1952 opinion of the Michigan Supreme Court, "providing that the members of a voluntary association are bound by the association's constitution and general laws." And also *Kaufmann v Chicago Corp*, 187 Mich App 284, 287, 1991 "stating that the constitutions, rules, and bylaws of the entity at issue "constitute a contract by all members" of the entity with each other and with the [entity] itself"." Citing there, *Allied Supermarkets, Inc. v. Grocer's Dairy Co*. 45 Mich App 310 at 315, 1973 opinion of the Court of Appeals for the citation "The bylaws of the of the corporation, as long as adopted in conformity with state law, constitute a bonding contract between the corporation and its shareholders."

And you know, that proposition that bylaws are made and impressed upon members of an organization is not unique of course in this context of political parties. For example, when I purchase a share of Coca-Cola and want to exert my rights to vote, I do so in accordance with the bylaws of the Coca-Cola Corporation assuming that it is a valid corporation organized under the laws of the United States and the state of Michigan. I am constrained to acting within those bylaws even though I didn't per say sign a contract to follow the bylaws. All I did was by a share of stock. You know, bylaws exist and members agree to follow them without strict, you know, limitations of contractual offer acceptance signature on that acceptance in a strict contractual sense. However, they do have the force of law, at least per Michigan law here, and thus become an appropriate area for judicial interpretation.

[ECF No. 11-9, PageId.482-510].

On June 11, 2024, the court signed *Order Granting Plaintiffs' Motion for Summary Disposition and Final Judgment for Declaratory and Injunctive Relief*. [ECF No. 11-10, PageId.511-13]. This order converted the prior preliminary restraining order into a permanent injunction by holding that bylaws are a contract and affirmatively ordered that (1) Karamo was properly removed as chairwomen of the MIGOP on January 6, 2024 and (2) any actions of Karamo since January 6, 2024 are void and have no effect.

10

On June 13, 2024, the defendants appealed the court's final order and have filed a motion to expedite the appeal which has been added to the court's motion calendar. [ECF No. 11-11, PageId.514-16].

**5.      Second Kalamazoo County litigation: _KGOP et al v Halcomb et al_**

On January 24, 2024, KGOP and Kelly Sackett filed a lawsuit against Rodney Halcomb, Kerry Lynn Elieff, Emily Crawford, Robyn Maxson, Kristina Karamo, Daniel Hartman, and James Copas [ECF No. 11-12, PageId.517-43]. _KGOP et al v Halcomb et al_, Case No. 2024-0020-CZ, Kalamazoo County Circuit Court. The plaintiffs alleged that the defendants breached the contract (bylaws) of KGOP and MIGOP and committed various other torts. The plaintiffs sought monetary damages. Not only did the Plaintiffs in this case (who were defendants in _KGOP et al v Halcomb et al_) breach the bylaws, but they also engaged in identify theft, fraud, tortious interference with business relationships, obstruction of justice, and conspiracy. On June 14, 2024, the court issued an _Opinion and Order_ declining subject matter jurisdiction [ECF No. 11-13, PageId.544-62]. The court determined that the allegations of breach of contract "would require the Court to intervene in the internal decisions of the KGOP and MIGOP." [_Id._ at 18]. Contrary to its prior opinion in _Pritchett-Evans_, the court did not accept subject matter jurisdiction of the tort claims. On June 25, 2024, the defendants appealed the court's final order. [ECF No. 11-14, PageId.563-65].

### LAW and ARGUMENT

**1.      Rule 11 and Sec. 1927 sanctions serve to deter baseless filing that are unsupported by law or fact**

In pertinent part, Fed. R. Civ. P. 11 ("Rule 11") states:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the

best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

(c) Sanctions.

> (1) *In General.* If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

> (2) *Motion for Sanctions.* A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

> (3) *On the Court's Initiative.* On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).

> (4) *Nature of a Sanction.* A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective

DePerno Law Office, PLLC • 951 W. Milham Avenue, PO Box 1595 • Portage, MI 49081
(269) 321-5064 (phone) • (269) 321-5164 (Fax)

> deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Similarly, 28 U.S.C. § 1927 ("Sec. 1927") states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Rule 11 and Sec. 1927 serve to deter baseless filings. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393 (1990). An attorney or party signing a document submitted to the court certifies that the document is not presented for an improper purpose and the legal contentions are warranted by existing law or by a nonfrivolous argument to change existing law. Fed. R. Civ. P. 11(b). The Court must objectively determine whether a filed document is well grounded in law and fact. *Mann v. G & G Mfr., Inc.,* 900 F.2d 953, 958 (6th Cir. 1990). Rule 11 sanctions may be imposed if any of the circumstances set forth in Rule 11(b)(1)-(4) exist. To avoid sanctions, a reasonable basis for the position taken by counsel "must exist *both in law and fact* at the time the position was adopted . . ." *Driskell v. Gen. Motors Corp.,* No. 04-40224, 2006 WL 901179, at *9 (E.D. Mich. Mar. 27, 2006) (quoting *McMillan v. Jones Transfer Co.,* No. 88-CV-40267, 1989 WL 205625, at *7 (E.D. Mich. July 26, 1989) (emphasis in original)). Once a court determines that Rule 11 has been violated, it must impose sanctions. *INVST Fin. Group, Inc. v. Chem-Nuclear Sys., Inc.,* 815 F.2d 391, 401 (6th Cir. 1987).

The Sixth Circuit looks to "whether the individual's conduct was reasonable under the circumstances'" when ruling on a motion for sanctions. *Int 'l Union, UAW v. Aguirre,* 410 F.3d 297, 304 (6th Cir. 2005) (quoting *Mihalik v. Pro Arts, Inc.,* 851 F.2d 790, 792 (6th Cir. 1988)). Both the plaintiff, and the plaintiff's counsel, have a duty to "undertake a 'reasonable inquiry' into the law and facts" before filing pleadings with the court and, thus, both the plaintiff, and the

13

plaintiff's counsel, may be subject to sanctions. *See Gilreath v. Clemens & Co.,* 212 F. App'x 451, 465 (6th Cir. 2007) (noting that Rule 11(b) "imposes a duty on both plaintiff and plaintiffs counsel alike" and affirming award of approximately $20,000 in Rule 11 sanctions); *Bynum v. Mich. State Univ.,* 117 F.R.D. 94, 99 (W.D. Mich. 1987) ("[S]anctions may be imposed on either attorneys or their clients under Rule 11[.]"). When a "reasonable inquiry" into the law would "undoubtedly have revealed" that the plaintiffs claim is meritless, Rule 11 sanctions are proper. *Gilreath,* 212 F. App'x at 465.

Finally, a court's "[c]onsideration of papers outside the pleadings is not inappropriate when determining the existence of a Rule 11 violation." *Eisenberg v. Univ. of New Mexico,* 936 F.2d 1131, 1133-34 (10th Cir. 1991) *(citing Triad Assocs., Inc. v. Chicago Housing Auth.,* 892 F.2d 583, 596 n.10 (1989), cert. denied 498 U.S. 845 (1990)).

Numerous cases also establish that federal district courts have inherent discretionary authority to sanction litigants. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 38 (1991); *First Bank of Marrietta v. Hartford Underwriters Ins. Co.,* 307 F.3d 501, 511-12 (6th Cir. 2002). The Sixth Circuit Court of Appeals has approved a district court's reliance on its inherent authority to control the litigants before it and the integrity of the court and its proceedings. *First Bank of Marrietta,* 307 F.3d at 512-15.

Moreover, sanctions are appropriate where a party has filed a frivolous action. It is well established that a claim is brought in bad faith if it is frivolous. *See Coppedge v. United States,* 369 U.S. 438, 445 (1962); *First Bank of Marrietta,* 307 F.3d at 519; *Nabkey v. Gibson,* 923 F. Supp. 117, 122 (W.D. Mich. 1990). Thus, this Court has inherent authority to sanction Courser and his counsel for filing this case. The Court may properly dismiss a complaint if the action is frivolous, vexatious, or if it fails to state a claim upon which relief may be granted. A complaint

14

is frivolous if it lacks an arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). Further, a "complaint lacks an arguable basis in law or fact if it contains factual allegations that are 'fantastic or delusional' or if it is based on legal theories that are indisputably meritless." *Brown v. Bargery,* 207 F.3d 863, 866 (6th Cir. 2000) (citing *Neitzke,* 490 U.S. at 327-28); *see also, Lawler v. Marshall,* 898 F.2d 1196, 1198-99 (6th Cir. 1990).

**2.**     **Plaintiffs' claims are baseless and Rule 11 and Sec. 1927 sanctions are appropriate**

Plaintiffs' complaint is deficient for several reasons. First, the Plaintiffs have not asserted a federal question. Second, this case violates the *Rooker-Feldman* doctrine and *Colorado River* doctrine which permit dismissal of this case. Third, the Plaintiffs have failed to state a claim upon which relief can be granted.

**A.**     **This Court does not have jurisdiction; Plaintiffs have not asserted a federal question**

Whether a court has subject matter jurisdiction is a threshold issue that determines whether a plaintiff can bring their claims in a specific court. *American Telecom Co., L.L.C. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)). Rule 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction. A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack). *Cartwright v. Garner*, 751 F.3d 752, 759-60 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). In the case of a facial attack, the court takes the allegations of the complaint as true to determine whether the plaintiff has alleged a basis for subject matter jurisdiction. [*Id.*] The test for determining jurisdiction on the face of the pleadings is whether the federal claim alleged is so patently without merit as to justify the district court's dismissal for want of jurisdiction. *Duke Power Co. v. Carolina Environmental*

*Study Group, Inc.,* 438 U.S. 59 (1978). The court's inquiry is limited to determining whether the challenged pleadings set forth allegations sufficient to show the court that it has subject matter jurisdiction over the matter. *Great Lakes Educational Consultants v. Federal Emergency Management Agency,* 582 F. Supp. 193 (W.D.Mich.1984).

A claim arises under federal law, for purposes of federal-question jurisdiction, when the cause of action is (1) created by a federal statute or (2) presents a substantial question of federal law. *Estate of Cornell v Bayview Loan Servicing, LLC,* 908 F.3d 1008, 1012-1014 (6th Cir. 2018). Whether a cause of action arises under federal law must be apparent from the face of the "well-pleaded complaint." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). Here, Plaintiffs allege that there is a federal question in this case [ECF No. 1, PageID.2] pursuant to 28 U.S.C. § 1331, the First Amendment, and the Fourteenth Amendment. But beyond their introduction paragraph, they include no actual count or claim for a federal question. To the contrary, as stated above, infra at page 20, they demand relief as to state issues, including asking this Court to declare all state election laws unconstitutional. *Complaint*, ¶56(f). Indeed, all relief demanded in paragraph 56 is state law relief.

Regarding the Fourteenth Amendment, it is only stated once generally in page 1 of the Complaint. It cannot be considered a real or serious issue in this case. Regarding the First Amendment, it is only raised in the context of the "right to freedom of association and the non-justiciability of certain intraparty disputes of a political party." [*Id.* at ¶4, 47(c), 57, 59(a), and 72]. Yet the only cases Plaintiffs cite to support their theory of a violation of the freedom of association are *Heitmanis v Austin*, 899 F.2d 521 (6th Cir. 1990) and *Ferency v Austin*, 666 F.2d 1023 (6th Cir. 1981). But these cases deal with state statutes on election law, not interpretation of bylaws in the context of breach of contract. In *Heitmanis,* the plaintiffs brought a claim that the

DePerno Law Office, PLLC • 951 W. Milham Avenue, PO Box 1595 • Portage, MI 49081
(269) 321-5064 (phone) • (269) 321-5164 (Fax)

automatic delegates provision in Michigan Election Law interfered with the First Amendment freedom of association of the State Party. In *Ferency*, the court affirmed the district court's conclusion that a statute with reasonable limitations on a party member's right to participate in the party's primary did not violate the freedom of association. Yet neither of those issues are presented in this case. Indeed, *Heitmanis* does not deal with a breach of bylaws. *Ferency* does not deal with delegates or a breach of bylaws. To the contrary, this present case is about whether a state court can exercise subject matter jurisdiction in a contract dispute involving bylaws. And if we look deeper into Plaintiffs' complaint, it is really a collateral attack on several state court decisions. This is a disguised attempt to reinstall Kristina Karamo as chair of the MIGOP. Further, these state court decisions are presently in the Michigan Court of Appeals.

Even if Plaintiffs somehow overcame these hurdles and deficiencies in their complaint, they have not alleged how the state court decisions have infringed on their freedom of speech or right to assemble. There is no allegation of viewpoint discrimination; there is no allegation of restricted speech; and there is no allegation that Plaintiffs cannot continue to assemble or engage in political meetings. To the contrary, they simply allege that no state court can accept jurisdiction of anything related in any way to a political party. This is simply a misstatement of the law. Simply put, Plaintiffs have not asserted a federal question and their case does not rise to the level of a federal claim. Plaintiffs' claims are entirely without merit and sanctions should be imposed.

**B.**     **Plaintiffs are trying to circumvent the normal state appellate process by filing a collateral attack in federal court despite the abstention rule**

Abstention is justified here under both the *Rooker-Feldman* doctrine and the *Colorado River* doctrine. Both *Pego et al v Karamo* and *KGOP et al v Halcomb et al* are presently in the Michigan Court of Appeals. Because those cases involve the same claims and issues that

Plaintiffs try to advance in this case, the Court should dismiss this case in its entirety based on abstention. Abstention can result in a dismissal or a stay, but in analyzing an abstention request, the Court should treat the request as "more analogous to Federal Rule of Civil Procedure 12(b)(1) dismissals for lack of subject matter jurisdiction than for Rule 12(b)(6) dismissals for failure to state a claim." *Green v. Aranas*, 775 F. App'x 310, 311 (9th Cir. 2019); *see also Jaffery v. Atlantic County Prosecutor's Office*, 695 F. App'x 38, 40 (3d Cir. 2017); *Gregorio v. Hoover*, 238 F. Supp. 3d 37, 45 (D.D.C. 2017).

### (1).   *Rooker-Feldman* doctrine

Under the *Rooker-Feldman* doctrine, federal courts other than the US Supreme Court, should not sit in direct review of state court decisions unless Congress has specifically authorized such relief. In short, federal courts below the Supreme Court must not become a court of appeals for state court decisions. The state court appellant must find a state court remedy, or obtain relief from the U.S. Supreme Court. Here, all complained of actions are still being litigated in state courts or the Michigan Court of Appeals. Indeed, both the primary cases by which Plaintiffs cite (*Pego et al v Karamo* and *KGOP et al v Halcomb*) are in the Michigan Court of Appeals. Plaintiffs lost the issue in *Pego v KGOP*. The trial court determined that it had jurisdiction over contract claims and held that Karamo was no longer the chair of the MIGOP. This case was filed before the trial court issued its decision in *KGOP et al v Halcomb et al*; but Plaintiffs were clearly worried so they filed this lawsuit prior to judgment. Now the trial court issued its decision, stating it does not have jurisdiction of contract claims involving political parties. Those cases are on appeal. It is not difficult so see what is happening here. Plaintiff are trying to circumvent the normal state appellate process by filing a collateral attack in federal court. This Court should not entertain that type of gamesmanship. Rule 11 sanctions are warranted.

DePerno Law Office, PLLC • 951 W. Milham Avenue, PO Box 1595 • Portage, MI 49081
(269) 321-5064 (phone) • (269) 321-5164 (Fax)

(2).    *Colorado River* <u>doctrine</u>

Under the *Colorado River* doctrine, federal courts should decline jurisdiction of a claim that is already subject to a pending state-court case. "[W]ise judicial administration" calls for the "dismissal of a federal suit due to the presence of a concurrent state proceeding." *Colorado River*, 424 U.S. at 818. "In assessing the appropriateness of dismissal in the event of an exercise of concurrent jurisdiction, a federal court may also consider such factors as the inconvenience of the federal forum, . . . the desirability of avoiding piecemeal litigation . . . and the order in which jurisdiction was obtained by the concurrent forums." [*Id.*] "The Supreme Court has articulated the following factors that district courts need to consider in determining whether a case qualifies as exceptional under the *Colorado River* doctrine: (1) whether one court assumed jurisdiction over property first; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order of jurisdiction in the concurrent forums; . . . (5) whether the case involves federal law; and (6) whether the state-court proceeding can adequately protect the parties' rights." *Foster-El v. Beretta U.S.A. Corp.*, 163 F. Supp. 2d 67, 71 (D.D.C. 2001). "*Colorado River* abstention is not based upon 'considerations of proper constitutional adjudication and regard for federal-state relations,' but on considerations of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Sheehan v. Koonz*, 102 F. Supp. 2d 1, 3 (D.D.C. 1999) (dismissing case based on abstention). When a court invokes *Colorado River*, "it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983).

The case of *Wolken v. Lufkin*, 1995 WL 704773 (N.D. Ill. Nov. 28, 1995), is analogous and instructive. In *Wolken*, a defamation defendant sought a stay based on *Colorado River* abstention because the plaintiff's employer had already filed a defamation claim against the defendant in Illinois state court relating to the same allegedly defamatory statements. [*Id.* at *1]. The court granted the motion, holding that although the state and federal actions did not involve identical issues, "the defamation claims in both courts arise from the same operative facts and involve virtually identical allegations of tortious conduct." [*Id.*] The court also held that the issues were substantially the same, and the parties involved were substantially the same because the two plaintiffs (employee and employer) had "nearly identical" interests in the litigation. [*Id.*] The court stated, "simultaneous litigation of both suits would likely result in undesirable piecemeal litigation. Because both courts would be required to resolve the same issue – whether [defendant] made false and defamatory statements concerning [employer] and [employee] – judicial efforts would be duplicative and wasteful, and might result in inconsistent resolutions of the same issue." [*Id.* at *2].

As in *Wolken*, this case involves a case in which state claims are currently being adjudicated in the Michigan Court of Appeals. Requiring Defendants to litigate these cases simultaneously in two different forums would result in duplicative, piecemeal litigation as the courts seek to resolve the same questions related to falsity and actual malice (among other issues), possibly with inconsistent results.

Moreover, as in *Wolken*, the six-factor test strongly favors abstention. First, there is no "property" over which either court can assume jurisdiction, so this prong is inapplicable. *See Foster-El*, 163 F. Supp. 2d at 71 ("This case, however, does not involve jurisdiction over property. Accordingly, this first factor does not weigh in favor of or against abstention."). The

second factor weighs in favor of abstention because this Court is an inconvenient forum considering litigation is already pending in state court. The third factor also favors abstention because litigating the same questions in two different jurisdictions will ensure piecemeal litigation and could lead to inconsistent results, particularly if different legal standards are applied in the two jurisdictions. *See Wolken*, 1995 WL 704773 at *2. Fourth, there can be no dispute that the orders in state court forums favors abstention in this case because they were filed many months before this case and are much further along. The fifth factor is particularly noteworthy, because as argued earlier, there is no federal question in this case. While it may be tempting to say that this case involves federal law because free speech and free association are protected by the First Amendment, Plaintiffs have not articulated their First Amendment claims and federal law does not provide the rule of decision for the state law tort claim. The sixth factor weighs heavily in favor of abstention because the state-court proceedings can clearly and adequately protect the parties' rights.

Abstention is appropriate here and the Court should dismiss this case. A stay is only appropriate "when there remains a federal interest aside from the state interest in the case, and the litigants are invited to continue in federal court at a later time if necessary." James Bedell, *Clearing the Judicial Fog: Codifying Abstention*, 68 Case W. Res. L. Rev. 943, 946 (2018). But here, there is no remaining federal interest once the state-law claims are resolved. Indeed, there is no federal question at all. In sum, all the factors weigh in favor of dismissal based on abstention. Accordingly, the balance of relevant *Colorado River* factors very strongly supports abstention in deference to the state action. Basic legal research and inquiry (or merely reading *Rooker-Feldman* or *Colorado River*) would have shown Plaintiffs and their attorneys that their claims in this regard are without merit. This begs the question of why they filed this lawsuit knowing the

underlying cases, which involve the same facts and issues, were in the Michigan Court of Appeals. The answer is obvious. Gamesmanship, which must be sanctioned.

### C. <u>Plaintiffs failed to state a claim upon which relief can be granted</u>

In addition to all the generalized barriers addressed above, the Plaintiffs claim for declaratory relief fails because it does not meet the pleading requirements of the only enumerated count: declaratory relief. Plaintiffs claim lacks any evidentiary or legal basis, and Rule 11 sanctions are appropriate.

For purposes of this analysis, it is important to note that although the federal rules do not require detailed factual allegations, they do demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Nor can a complaint survive dismissal if it only tenders "naked assertion[s]" devoid of "further factual enhancement." [*Id.* at 557]. As argued above, it is difficult, at best, to understand the First Amendment argument. The complaint fails based on the pleading standard alone.

Plaintiffs claim also fails to state a claim upon which relief can be granted based on the Plaintiffs' prayer for relief. Plaintiffs' demands are moot or impossible. The Court cannot grant the relief requested. Plaintiffs demand the following:

> 56. The Plaintiffs request this court declare:
>
> > a.   That the organization of delegates of a political party within a county have an inherent right to delegate authority to an executive committee.

This is not something this Court can grant. The governance of the KGOP and MIGOP and the duties of their members and officers are defined by their bylaws. Bylaws are a contract among the members of the committee. They are not "suggestions" that can be disregarded at the

DePerno Law Office, PLLC • 951 W. Milham Avenue, PO Box 1595 • Portage, MI 49081
(269) 321-5064 (phone) • (269) 321-5164 (Fax)

convenience of any member or officer. See e.g. *El-Khalil*, 504 Mich at 152 ("Plaintiff asserts that

the denial of his privileges was in breach of the bylaws . . . [p]laintiff's assertion is legally

sufficient for his breach-of-contract claim to survive MCR 2.116(C)(8)." [*Id.* at 166]. See also

*Conlin v Upton*, 313 Mich App 243, 255; 881 NW2d 511 (2015) (bylaws "constitute a binding

contractual agreement between [an] [entity] and its members"). See also *Kauffman v Chicago*

*Corp*, 187 Mich App 284, 287; 466 NW2d 726 (1991) (stating that "those constitutions, rules,

and bylaws of the entity at issue "constitute[d] a contract by all members" of the entity "with

each other and with the [entity] itself"). The KGOP bylaws at issue in this case state that "A

county convention shall be held within twenty (20) days after the November general election in

even-numbered years to elect the non-candidate members of the KGOP Executive Committee."

[ECF No. 11-17, PageId.570-89, ¶6.3]. Further, "[t]he duties of the executive committee shall be

to establish general policies and procedures to conduct the affairs of the KGOP in keeping with

its mission statement and party platform or Statement of Values as adopted in Article 2. The

Executive Committee may, at its discretion, foster, promote, recognize, and aid organizations in

Kalamazoo County and cooperate with other Republican organizations." [*Id.*, ¶6.3]. This Court

cannot provide relief to the Plaintiffs that is already set forth in the bylaws. Their demands are

moot. Plaintiffs cannot demonstrate how the Court can grant this request and their claim is

factually and legally baseless.

> b. That the delegates may, when they choose to act with a
>    convention, act to remove authority delegated to the executive
>    committee for that county political committee and elect a new
>    executive committee.

Again, this is not something this Court can grant. MCL 168.622 states that "[t]he county

conventions of each political party shall be held at the time and place that the county committee

of each political party, through its chairperson, designates." Delegates, members, non-delegates,

or non-members are not permitted to call a county convention for any reason, even if a large majority so desire. Further, pursuant to the KGOP bylaws, only the Chair can call a convention and conduct county conventions." [*Id.*, ¶6.3]. Only the KGOP can publish the convention rules. [*Id.*, ¶5.3]. They must be published 2 months prior to any county convention. No member shall give a proxy for representation at a county convention. [*Id.*] Plaintiffs cannot demonstrate how the Court can grant this request and their claim is factually and legally baseless.

    c.    That the county executive committee is responsible for holding a convention of delegates to elect county precinct delegates to represent the political party in certain state convention and district caucuses including the ones for the formation of district, state, and national committees by election of members and/or officers.

County precinct delegates are not elected at a county convention. MCL 168.624 describes the process for delegates. The candidate for delegate must reside in the precinct. "A candidate must file an affidavit of identity as prescribed in section 558(1) with the county clerk of the county in which the candidate resides." [*Id.*] If Plaintiffs want to change the law, then need to speak to their elected representatives, not petition this Court. Plaintiffs cannot demonstrate how the Court can grant this request and their claim is factually and legally baseless.

    d. ·    That a political party committee may adopt bylaws to regulate the conduct of its committee meetings and rules for the conduct of its conventions.

The KGOP has already adopted bylaws that regulate the conduct of committee meeting and rules for the conduct of its conventions. [*Id.*, Articles 5-7, generally]. Plaintiffs cannot demonstrate how the Court can grant this request and their claim is factually and legally baseless.

    e.    That the delegated authority to the district, state and national committees is defined by their committee bylaws as long as the bylaws are not in violation of the national bylaws as to the state, district, and local committees; and as long as the county and district bylaws are not in violation of state bylaws.

DePerno Law Office, PLLC • 951 W. Milham Avenue, PO Box 1595 • Portage, MI 49081
(269) 321-5064 (phone) • (269) 321-5164 (Fax)

The Court cannot grant this relief. Plaintiffs appear to not understand how political parties work or how they are structured. The MIGOP bylaws [ECF No. 11-18, PageId.590-614] provide for autonomy of district and county committees, such as KGOP, including but not limited to the following:

> ARTICLE II – Purpose
> The purpose of this Committee shall be as follows: . . . (B)(2) work in close cooperation with other Republican state, district and county organizations.
>
> ARTICLE XIII – County Executive Committees and Optional County Party Committee
> A. Number. There are as many as eighty-two (82) county executive committees and four (4) congressional district portion committees in the State of Michigan. The county executive committee of each county shall adopt its own bylaws and rules of procedure.
>
> ARTICLE XI – Organization of the Michigan Republican Party
> B. Non-Affiliation of Political Party Committees. Although the Committee works in cooperation with congressional district and county party organizations, the Committee is not "affiliated" with the congressional district and county party organizations so that any contributions made by these political party committees shall be presumed to be made by one political committee under the Federal Election Campaign Act, 2 USC § 431 et seq., and corresponding regulations or under the Michigan Campaign Finance Act, MCL 169.201 et seq. No provision in these Bylaws shall be interpreted to allow any political party committee to control any other political party committee so that any contributions made by these political party committees shall be presumed to be made by one political committee under the Federal Election Campaign Act, 2 USC § 431 et seq., and corresponding regulations or under the Michigan Campaign Finance Act, MCL 169.201 et seq.

The MIGOP bylaws are clear and provide for autonomy of county committees. The county committees shall adopt their own bylaws and rules of procedure. The MIGOP is specifically not affiliated with the county committee. The MIGOP shall not assert control over any county committee. Likewise, the county parties are not under the control of MIGOP. The MIGOP is not under control of RNC. If Plaintiffs had their way and MIGOP asserted control over any county of district committee, it would bust the FEC/State contribution limits, resulting

in significant fines. MIGOP has not set up a centralized monitoring system to ensure that all contributions made and received by all county committees, district committees, and MIGOP are collectively within the limits. Such control over county parties would mean that MIGOP would be required to report all contributions made to all county committees. This would prove to be both illegal and a logistical nightmare; as well as violate state election law and the MIGOP bylaws. Plaintiffs cannot demonstrate how the Court can grant this request and their claim is factually and legally baseless.

   f.  That unless the committee bylaws otherwise provide for an acceptance of the state laws that any law enacted by the state to regulate the conduct of the affairs of a political party as a political party is unconstitutional.

This demand may be the most preposterous of Plaintiffs' demands. The are asking this Court to declare that any state law (not specifically incorporated into the bylaws) that regulates the conduct of a political party, is unconstitutional. Michigan Election Law is governed by Chapter 168, Act 116 of 1954, being MCL 168.1 through 168.992 [ECF No. 11-19, PageId.615-19]. Plaintiffs want this Court to declare roughly 992 statutes to be unconstitutional. It is absurd and frivolous. Plaintiffs cannot demonstrate how the Court can grant this request and their claim is factually and legally baseless.

   g.  That the political committee is vested with the final authority to interpret its own bylaws and rules as a political party body – free from government intervention.

Political committees already have final authority to interpret their bylaws under the "political questions doctrine;" provided, however, when a party asserts a breach of contract claim or alleges a tort. The Supreme Court has strongly cautioned against judicial intervention in internal political party disputes.

  Judicial intervention in this area traditionally has been approached with great caution and restraint. It has been understood since our national political parties

first came into being as voluntary associations of individuals that the convention itself is the proper forum for determining intra-party disputes as to which delegates shall be seated. Thus, these cases involve claims of the power of the federal judiciary to review actions heretofore thought to lie in the control of political parties.

*O'Brien v Brown*, 409 U.S. 1, 4 (1972). Plaintiffs want to expand the *O'Brien* decision to literally every action taken by political parties. In other words, in Plaintiffs' dream world, political parties would operate with immunity from breach of contract and tort. They could disparage and defame people, violate contracts, and engage in significant tortious conduct with impunity. Presumably, every company in the country would become "political." This Court cannot expand *O'Brien* to create Plaintiffs' chaotic utopia. Plaintiffs' claims are frivolous.

> h.   That no party shall ask for, nor any court shall enter, orders interpreting the bylaws of a political committee for any reason; especially on any claim that the bylaws constitute a contract between members.
>
> i.   That no party may commence a lawsuit for civil damages based on tort solely for the conduct of political activity in the name of a political party committee when there is a dispute within factions as to leadership or interpretation of bylaws.

Both paragraphs are similar. Again, this Court cannot order the relief requested. Michigan law already states otherwise. See again, e.g. *El-Khalil*, *Conlin*, and *Kauffman*, supra, Bylaws are a contract of the members of the entity. Plaintiffs cannot demonstrate how the Court can grant this request and their claim is factually and legally baseless. Plaintiffs want this Court to overturn Michigan case law even though the underlying cases are presently pending before the Michigan Court of Appeals. For the reasons stated above, Plaintiffs have failed to state a claim upon which relief can be granted. As such, there is no evidentiary or legal basis for this claim and it is frivolous.

DePerno Law Office, PLLC ● 951 W. Milham Avenue, PO Box 1595 ● Portage, MI 49081
(269) 321-5064 (phone) ● (269) 321-5164 (fax)

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Honorable Court grant Defendants' motion and award monetary and nonmonetary sanctions against Plaintiffs and their attorneys, Dan Hartman and Lester Turner.

Respectfully submitted

DePERNO LAW OFFICE, PLLC

Dated: July 4, 2024

_____

Matthew S. DePerno (P52622)
Attorney for Defendants

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation set forth in Local Rule 7.2(b) because the brief contains 9,035 words, including headings, footnotes, citations, and quotations, but not including the case caption, coversheets, any table of contents, ant table of authorities, signature block, attachments, exhibits, or affidavits, in compliant with Local Rule 7.2(b).

Respectfully submitted

DePERNO LAW OFFICE, PLLC

Dated: July 4, 2024

_____

Matthew S. DePerno (P52622)
Attorney for Defendants